Field & others *v.* Woodmancy.

## LABAN FIELD & others *vs.* JAMES WOODMANCY.

The defendant covenanted with the plaintiffs to proceed to California, as one of a joint stock company, there to labor for two years, and agreed to remit the plaintiffs one half of the net proceeds of one share in said company, as often as dividends should be made. The other members of the company, while on the way to California, contrary to the wishes of the defendant, abandoned the joint enterprise, and sold their vessel and cargo. *Held*, that the defendant was not liable on his covenant to proceed to California.

COVENANT upon a contract under seal, set out in the margin.[1]

[1] Articles of agreement, made this twenty-third day of October, A. D. 1849, between Laban Field, David Munroe, and Elias Carr of Taunton, county of Bristol, of the first part, and James Woodmancy, of said Taunton, of the second part.

*First.*—The said Field, Munroe, and Carr, in consideration of the promises and agreements hereinafter contained, doth herewith pay to the said Woodmancy, the sum of three hundred dollars; said sum being the amount of an outfit for California, for one share in the Taunton Working, Trading, and Mining Company.

*Second.*—In consideration whereof, the said Woodmancy hereby promises, covenants and agrees with the said Field, Munroe, and Carr, and their assigns, that he, the said Woodmancy, will sail in the bark Delaware, for, or proceed to, California and the gold regions, as a member of the said Taunton Working, Trading, and Mining Company; that he will well and truly conform to all the articles of agreement of said company, and as said Field, Munroe, and Carr's substitute, perform all the duties which attach to their share therein; that said Woodmancy will well and truly pay to the said Field, Munroe, and Carr, or their assigns, one half part of all the proceeds and income of the gold digging, mining, trading, and other profits of the share of the said Field, Munroe, and Carr, in said company, said share being

The original declaration set out the entire contract and a breach of its provisions, and an additional count was filed, averring a direct covenant by the defendant to the plaintiff to labor in California for two years, and a breach thereof, but it did not claim any damages for not accounting for the proceeds of the vessel sold.

At the trial in the court of common pleas, before *Byington,* J. the plaintiffs proved the due execution of the contract and that the defendant did not proceed to California as by the terms of the contract the plaintiffs claimed he was bound, to do.   It was also proved that the defendant did sail in the bark Delaware under his said contract, October 31st, 1849, and that his connection with the Taunton Working, Trading, and Mining Company, referred to in the contract, was this : The plaintiffs were owners of a share in said company, and the defendant took the place as their substitute under the contract.

---

one forty-ninth part of the stock of said company, after deducting the necessary expenses thereof in California, together with a like proportion of all his income in California, whether as a member of said company or otherwise, after a like deduction of expenses, for and during the period of two years from the sailing of said bark ; that said Woodmancy will inform the said Field, Munroe, and Carr, of his proceedings in California, by writing to them, at least, once in every three months during said period of two years ; and that he will well and truly transmit to the order of said Field, Munroe, and Carr, or their assigns, their share of all the profits and income, as above stated, as often as dividends shall be made by said company, and whenever the share of profits and income belonging to said Field, Munroe, and Carr's share, shall amount in the hands and possession of the said Woodmancy, to the sum of one hundred dollars.

And in case the said Woodmancy shall well and truly conform to the articles and by-laws of said company, and in all respects perform the duties of a member of said company, as the substitute of said Field, Munroe, and Carr, and fulfil the promises and agreements aforesaid, and shall obtain a certificate to that effect from the officers of said company, the said Field, Munroe, and Carr, doth hereby promise and agree, upon the presentation to them of said certificate at or after the expiration of the said period of two years, to convey to the said Woodmancy one half part of the share of the said Field, Munroe, and Carr, in the said bark Delaware, it being one ninety-eighth part of the same, or in case of the sale of said bark, to pay to him a like proportion of the money realized from the sale thereof.

LABAN FIELD        [Seal].
DAVID MUNROE       [Seal].
ELIAS CARR         [Seal].
JAMES WOODMANCY    [Seal].

The plaintiffs paid him three hundred dollars according to their contract, which sum the defendant paid into the company. The crew of said bark were members of said company; the captain and mates were elected by vote of said company. The bark proceeded on her voyage as far as Særa, on the eastern coast of South America, and there the company went ashore and remained about a week. The company then decided to return as far as the West Indies, and on arriving at Barbadoes, by vote of the company, most of the cargo was sold; the bark proceeded to Chagres, where the remainder of the cargo and bark itself were sold. The sum of about fifty dollars was paid the defendant as his share of the proceeds of the cargo. Upon the sale of said bark, the defendant took passage and returned home in her, where he arrived about March 1st, 1850.

The defendant offered evidence (the plaintiffs objecting) tending to show that said bark could not proceed to California on account of the unskilfulness and incapacity of the captain; that the bark could not proceed beyond Særa, because it was unseaworthy, from causes existing at the time of sailing; that on arriving at Chagres, the company displaced the captain and appointed one of the mates in his stead. The defendant also introduced evidence tending to show that at Chagres the expedition was abandoned and the company broken up, and it was left to the choice of each one to go to California or return home; to which evidence the plaintiffs objected.

The plaintiffs were residents of Taunton, and there was evidence tending to show that Field, one of the plaintiffs, was present at one of the meetings of the company prior to sailing, but there was no other evidence of their taking part in the proceedings of the company, other than as appeared by their said contract with the defendant. There was also evidence tending to show the defendant was present at one or more of such meetings. On this evidence the plaintiffs contended, and asked the judge to rule,

1st. That by the true legal construction of the contract, the defendant's agreement to proceed to California was of itself

an independent covenant, which he was bound to perform, and from which he could not legally be excused by any of the facts offered to be shown in evidence, and the plaintiffs were therefore entitled to recover for this breach of covenant.

2d. That the defendant also broke his covenant in not accounting with the plaintiffs for the proceeds of said expedition according to the terms of said contract, and that the facts shown by defendant would not constitute any legal excuse for such breach.

These instructions the judge declined giving, and instructed the jury, that it was the duty of the company to furnish a vessel fit and sufficient to make the voyage, and officers competent to manage the ship. If they failed to do this, and it was found by the company after proceeding on the voyage, that the vessel was at the time of setting sail, unfit and insufficient to make the voyage, and the captain so incompetent and incapable that they could not make it, the refusal by the defendant to go to California, by other means to be provided by himself, would not be a breach of his bond, unless he acted with the company in providing the ship and electing the officers for the voyage; if he did, then such unfitness of the vessel or incompetency would be no excuse, and his refusal to proceed would be a breach of his bond, nor would he be excused by reason of any accident occurring to the vessel, or misconduct or unskilfulness of the captain occurring after embarking on the voyage. That if at Chagres the company broke up, and wholly abandoned the expedition, and refused to go on, and the defendant was ready and willing to proceed, he was not bound to go on alone without them, and a refusal to proceed under such circumstances, would not be a breach of his bond. If, however, he concurred and participated in breaking up the company and abandoning the expedition, his refusal to proceed would be a breach of his bond, though the rest of the company refused to go on.

A verdict having been found for the defendant, the plaintiffs alleged exceptions.

*B. Sanford,* (*N. Morton* with him,) for the plaintiffs.

*C. I. Reed,* for the defendant.

Field & others *v.* Woodmancy.

BIGELOW, J. We are of the opinion that the instructions given to the jury in this case, as to the true meaning and intent of the stipulations in the contract relied on by the plaintiffs, were sufficiently favorable to them.

It is the duty of courts of law to interpret agreements in such manner as to enforce them according to the sense in which they were understood by the parties at the time they were made. This cannot be done by selecting out a particular stipulation and insisting upon its exact and literal performance. It is necessary, not merely to look at the language in which it is expressed, but also to consider the situation of the parties, the subject-matter of the contract, and the purposes and objects to be accomplished by it. Parties must be presumed to have entered into an agreement with the knowledge of the limitations and qualifications which necessarily arise and grow out of its subject-matter, and to have had them in contemplation, although they may not be expressed in terms in the written contract. *Mill Dam Foundery* v. *Hovey,* 21 Pick. 417, 441.

Applying these elementary principles to the covenant entered into by the defendant upon which this suit is brought, we think it very clear, upon the facts reported, that there has been no breach upon which an action can be maintained. The defendant, it is true, agreed with the plaintiffs to go to California and to remain there for two years, and it appears that he failed to comply with this stipulation. If nothing further appeared, the plaintiffs would have shown a breach of the agreement, for which they would be entitled to damages. But it is necessary to bear in mind with whom, how, and for what purpose he was to go there. He was not to go alone, upon his individual responsibility, to trade and labor for the benefit of the plaintiffs and himself. He was to proceed thither as one of a company or copartnership, of which the plaintiffs and others were members. It was a joint enterprise or adventure, in which the capital, industry, and energy of each member, or a substitute to be approved by the company, were to be combined for the mutual benefit and profit of all. The plaintiffs had no right, under this contract, to require the defendant to give his

individual time and services to them, disconnected from those who had agreed to render theirs in carrying on the joint enterprise.    The plain intent of all parties was to engage in mining and trading operations in California, as a copartnership. When this purpose was defeated, it is manifest the contract between the parties was at an end.    It appears by the undisputed facts in this case, that without fault on the part of the defendant, and in opposition to his wishes and remonstrances, the company was broken up at Chagres, the vessel sold, and the expedition abandoned.    Under these circumstances, we think the court were right in instructing the jury, that the defendant was not bound to go to California alone, without the other members of the company, and his refusal to proceed was not a breach of his covenant for which damages can be recovered.

This view of the case renders it unnecessary to consider the instructions given by the court relative to the unseaworthiness of the vessel and the competency of the master.    The joint enterprise having been broken up and abandoned without any fault on the part of the defendant, it is quite immaterial for the purposes of this case, what causes operated to bring it to an end.

The claim made by the plaintiffs to recover damages for a breach of the agreement on the part of the defendant, in not accounting for the share of the proceeds of the vessel received by him, cannot be supported in this action.    Upon reference to the amended count on which the plaintiffs rely, the only breach of the covenants alleged is, that the defendant did not proceed to California.    If, therefore, the plaintiffs have any claim on the defendant for any part of the money received by him, it cannot be recovered under the present declaration.

*Exceptions overruled.*